IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-00938-MEH

MSC SAFETY SOLUTIONS, LLC,

      Plaintiff,

v.

TRIVENT SAFETY CONSULTING, LLC,
DAX BIEDERMAN,
BRYAN McCLURE, and
SCOTT SEPPERS,

      Defendants.

---

## ORDER

---

**Michael E. Hegarty, United States Magistrate Judge.**

      This action arises out of the departure of the individual Defendants from employment with Plaintiff to form the entity Defendant. Plaintiff's allegations against Defendants involve computer fraud, misappropriation of trade secrets, and other state law violations. *See* Am. Compl., ECF 16. In response, Defendants have filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) arguing the Plaintiff fails to state plausible federal claims and the Court lacks supplemental jurisdiction to hear the state law claims or, in the alternative, Plaintiff fails to state plausible state law claims. For the reasons that follow, the Court will grant in part and deny in part the Defendants' motion.

## STATEMENT OF FACTS

      The following are relevant factual allegations (as opposed to legal conclusions, bare assertions, or merely conclusory allegations) made by Plaintiff in its First Amended Complaint, which are taken as true for analysis under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009).

Plaintiff MSC Safety Solutions, LLC, f/k/a MSC Inc., d/b/a MSC Safety Solutions ("MSC") is a Colorado company that competes in the safety consulting industry. MSC provides loss control and risk management services to large and small commercial construction contractors, government agencies, and general industry manufacturing facilities. Among other things, MSC's services include providing safety policy development, training for management personnel and field level employees, safety and loss control inspections, accident investigations and OSHA compliance assistance and representation. The safety consulting industry is a small niche industry that is highly competitive.

Because of the highly competitive nature of the safety consulting industry, MSC closely protects and preserves its confidential information and trade secrets, including customer and vendor lists, product and services pricing, and training materials. This valuable information is developed and maintained by MSC at significant expense. To protect and preserve its confidential information and trade secrets, MSC uses, among other things, firewalls, antivirus software, password protection, and physical safeguards. MSC does not share its customer and vendor information, pricing information, product information, or training materials (collectively, the "Proprietary Information") with the public. MSC provides the customer and vendor information only to its current employees and only for the purpose of carrying out their MSC job responsibilities.

MSC currently has six employees. With the exception of the Director of Operations and Troy Clark, the owner and President of MSC, all of MSC's employees are employed in positions called Consultants or Consultants & Safety Specialists. The Consultants and Consultants & Safety Specialists are the "face" of the Company, and such positions are positions of authority, trust, and responsibility with MSC. Defendants Dax Biederman and Bryan McClure joined MSC in 2016 and were employed as Senior Safety Consultants. Defendant Scott Seppers joined MSC in April 2017

and was employed as a Safety Consultant. MSC hired these individual Defendants to provide MSC customers and clients with safety training, assist clients with any safety related matters, and conduct inspections of client work sites. As employees of MSC, the individual Defendants were given access to MSC's Proprietary Information for the purpose of carrying out their job responsibilities. In addition, the individual Defendants were provided with company email addresses in MSC's email system to conduct MSC's business on MSC's computers. The individual Defendants each terminated his employment with MSC on November 1, 2018.

On September 29, 2018, while still employed with MSC, the individual Defendants filed Articles of Incorporation for "Trivent Safety Consulting Corp." with the Colorado Secretary of State and established a Facebook page and Twitter account for the new entity. Subsequently, on October 23, 2018, the Defendants filed a Statement of Conversion with the Colorado Secretary of State, converting "Trivent Safety Consulting Corp." from a corporation to a limited liability company, and filed Articles of Organization for Defendant Trivent Safety Consulting, LLC ("Trivent") and registered Trivent as a limited liability company. Trivent is a direct competitor of MSC and provides safety consulting services in the State of Colorado.

While the individual Defendants were MSC employees, they used MSC's IT resources to wrongfully solicit testimonials from MSC's clients and customers. These solicited testimonials are now used in the marketing of Trivent's products and services in direct competition with MSC. In addition, the Defendants used MSC's financial resources and MSC's company credit card to purchase products and services for the operation of Trivent. These purchases were made in furtherance of competing with MSC. Additionally, the Defendants made disparaging remarks about MSC and attempted to convince MSC clients and current and prospective customers to transfer their business to Trivent. Defendants' attempts to divert MSC's clients and current and prospective

customers to Trivent are shown on Trivent's LinkedIN, Facebook, and Twitter pages where, on November 5, 2018, four days after their termination date, Defendants posted the following "byline" for Trivent: "The same faces you've come to know over the years in a new setting."

Prior to their termination date, and without authorization from MSC, Defendants removed from MSC and/or copied on MSC copiers Proprietary Information and other confidential information for the benefit of Trivent. Biederman and McClure, without authorization from MSC, deleted thousands of Company emails from MSC's email servers. After his termination, on or about November 1, 2018, McClure accessed MSC's online website management system without authorization and deleted information and data from MSC's website. MSC engaged its outside information technology provider, Aspire Technology Solutions, Inc. ("Aspire"), in an attempt to restore MSC's email accounts, website account, and server to their conditions prior to Defendants' conduct. Aspire was unable to accomplish this. MSC engaged a computer forensics firm to assess the alleged manipulation of and damage to the email accounts, website account, and server, as well as to further investigate the extent of Defendants' conduct; at significant expense to MSC, the firm was able to recover some of the deleted emails from the Defendants' company-owned computers.

Prior to their termination date, the individual Defendants ordered over five hundred "ITI Rigging Cards," valued at approximately $2,000.00, using MSC's company credit card. ITI Rigging Cards are training cards for trainees in MSC classes. The cards were delivered to MSC's office in Frederick, Colorado. After the Defendants were terminated, MSC conducted an inventory audit to determine whether the individual Defendants took any safety equipment and/or other materials, and MSC discovered that the Rigging Cards, along with numerous other safety equipment items, were missing.

At no time did the individual Defendants disclose to MSC that they were conducting Trivent

4

business while employed by MSC.

## LEGAL STANDARDS

The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two-prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 679. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *S.E.C. v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014) (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017) (quoting *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011)). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of

each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief." *Id*. (quotation marks and citation omitted).

## ANALYSIS

Defendants first argue that Plaintiff fails to state plausible claims under federal law; accordingly, the Court will begin by analyzing Plaintiff's claims for violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq*. ("CFAA") and the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq*. ("DTSA"). If Plaintiff does not state plausible federal claims, the Court will determine whether it should exercise supplemental jurisdiction over Plaintiff's state law claims. If it does exercise jurisdiction and/or if Plaintiff states plausible federal claims, the Court will evaluate whether Plaintiff states plausible state law claims.

## I.     First Claim for Violations of the CFAA

Plaintiff alleges against all Defendants violations of the CFAA pursuant to 18 U.S.C. §§ 1030(a)(4), 1030(a)(5)(A), 1030(a)(5)(B), 1030(a)(5)(C), and 1030(g). Section (g) provides a

private right of action (under certain circumstances) in this otherwise "criminal" statute:

> Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief. A civil action for a violation of this section may be brought only if the conduct involves 1 of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(I).

*Id.*; *see also Cloudpath Networks, Inc. v. SecureW2 B.V.*, 157 F. Supp. 3d 961, 972 (D. Colo. 2016).

Here, Plaintiff alleges Defendants' conduct falls under subclause (I), "loss to 1 or more persons during any 1-year period ... aggregating at least $5,000 in value." 18 U.S.C. § 1030(c)(4)(A)(i)(I); *see also* Am. Compl. ¶ 59. As such, "[d]amages for a violation involving only conduct described in subsection (c)(4)(A)(i)(I) are limited to economic damages." 18 U.S.C. § 1030(g).

Section 1030(a) describes the conduct prohibited by the statute; here, the relevant subsections provide:

> (4) knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer and the value of such use is not more than $5,000 in any 1-year period;
>
> (5)(A) knowingly causes the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes damage without authorization, to a protected computer;
>
> (B) intentionally accesses a protected computer without authorization, and as a result of such conduct, recklessly causes damage; or
>
> (C) intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage and loss.

18 U.S.C.A. § 1030. Plaintiff alleges Defendants violated these provisions as follows:

> Individual Defendants and Trivent, acting through Individual Defendants, intentionally and knowingly accessed MSC's email accounts, website account, and server without authorization from MSC and/or exceeded any such authorized access, with the intent to defraud MSC by recklessly deleting information and data from the MSC website and email accounts and server. In addition, Biederman and McClure,

7

on behalf of Defendants, intentionally and knowingly deleted thousands of MSC emails without authorization from MSC and/or exceeded any such authorized access, with the intent to defraud MSC by recklessly depriving MSC of vital communications and data which were stored on the email server.

Am. Compl. ¶¶ 60-61. Defendants argue the allegations fail to support that they acted "without authorization," since it is undisputed that the individual Defendants were authorized to access Plaintiff's computers before their termination date, November 1, 2018, and all of the alleged conduct occurred before that date. In addition, Defendants contend that Plaintiff fails to allege damages that are recoverable under the CFAA.

Plaintiff counters[1] that its allegations plausibly demonstrate that Defendants either exceeded their authorization or acted without authorization in "permanently delet[ing] Company emails from MSC's protected computers and servers" and "intentionally access[ing] MSC's website account after the Defendants' termination." Resp. 9. In addition, Plaintiff asserts that, just because the individual Defendants had authority to access Plaintiff's computers to perform their job duties, such authority itself does not preclude liability under the CFAA.

The Court finds Plaintiff plausibly alleges violations of § 1030(a)(4) against Defendants Biederman and McClure and a violation of § 1030(a)(5)(B) against Defendant McClure. This Court is guided by the opinion in *Cloudpath Networks, Inc.*, in which the court found a necessary

---

[1] Plaintiff first argues that Defendants improperly "attempt to limit the CFAA's application to only permit a private right of action under subsection (a)(5)(B)." Plaintiff cites to cases standing for the proposition that "although § 1030(g) refers to subsection (a)(5)(B), the statute does not limit civil suits to violations of § 1030(a)(5)." Resp. 6-7 (citing *Paradigm Alliance, Inc. v. Celeritas Tech., LLC*, 659 F. Supp. 2d 1167, 1191 (D. Kan. 2009)). However, *Paradigm* and the other cases cited by Plaintiff address an older version of § 1030(g), which referred to the provision now numbered as § 1030(c)(4)(A). *See Lateral Link Grp., LLC v. Springut*, No. CV145695JAKJEMX, 2015 WL 12552055, at *3 (C.D. Cal. July 17, 2015) (recognizing the statute was renumbered as follows: "(a)(5)(B)(i) is now (c)(4)(A)(i)"). Accordingly, the Court finds this argument irrelevant and unpersuasive.

distinction between the terms "without authorization" and "exceeds authorized access":

> As it turns out, however, construing "authorized" as "permitted to access at least some data on the computer" is the only construction that avoids making "exceeds authorized access" entirely redundant to "without authorization." *See F.T.C. v. Accusearch Inc.*, 570 F.3d 1187, 1198 (10th Cir. 2009) ("Under a long-standing canon of statutory interpretation, one should avoid construing a statute so as to render statutory language superfluous." (internal quotation marks omitted)). Again, the point in dispute here is whether the specific wording of an employers policies can affect CFAA liability. If it can, then a policy worded as this Court proposed—"Employees are authorized to use company computers solely to the extent they do so for company purposes"—would mean that any employee exceeding that authorization would be without authorization. "Exceeds authorized access" would then be superfluous. By contrast, a distinction remains if "without authorization" means "not permitted to access any data on the computer," and "exceeds authorized access" means "permitted to access at least some data on the computer, but accessing data outside the scope of that permission."

157 F. Supp. 3d at 981–82; *see also Central Bank & Trust v. Smith*, 215 F. Supp. 3d 1226, 1232 (D. Wyo. 2016) (citing *Cloudpath* with approval and concluding, "This Court agrees with the narrow interpretation of the statute and sees no reason to depart from the interpretation of sister district courts.").

With this distinction in mind, the Court finds Plaintiff's allegation, taken as true, that "Biederman and McClure ... without authorization from MSC, deleted thousands of Company emails from MSC's email servers with the intent to defraud MSC and in furtherance of their scheme to compete with MSC while still employed by MSC" (Am. Compl. ¶ 46) plausibly states that these Defendants exceeded their authorized access[2] to Plaintiff's computers in violation of § 1030(a)(4) by altering (deleting) information they were not entitled to delete. Further, Plaintiff's allegation that "[a]fter his termination, on or about November 1, 2018, McClure, on behalf of all Defendants,

---

[2]"Exceeds authorized access" is defined in the CFAA as "to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter." 18 U.S.C. § 1030(e)(6).

accessed MSC's online website management system without authorization and deleted information and data from MSC's website" (Am. Compl. ¶ 47) plausibly states violations of both §§ 1030(a)(4) and 1030(a)(5)(B) (for the latter, Plaintiff specifically alleges that McClure "*recklessly* delet[ed] information and data from the MSC website" (Am. Compl. ¶ 60)).

With this said, the Court finds the allegations, even taken as true, do not otherwise state claims for relief against all Defendants. In fact, the allegations supporting Plaintiff's First Claim for Relief, except in a conclusory fashion, do not mention Defendant Seppers. Moreover, Plaintiff neither alleges nor argues any vicarious liability theory for its CFAA claim against Trivent. While courts have applied vicarious liability to find plausible claims against entity Defendants, they point to allegations in which the entities "urge" or "direct" their agents to engage in the CFAA's prohibited conduct. *See Cloudpath Networks, Inc.*, 157 F. Supp. 3d at 985 ("If SecureW2-USA encouraged Grimm's post-resignation access, which is a reasonable inference from the FAC, then SecureW2-USA may be vicariously liable for the alleged CFAA violation."); *see also Charles Schwab & Co. v. Carter*, No. 04 C 7071, 2005 WL 2369815, at *7 (N.D. Ill. Sept. 27, 2005) ("To hold otherwise would exempt a principal from liability when its agent improperly accessed a computer at the direction of the principal."). It is not surprising that no such allegations exist here, particularly where Trivent is allegedly a brand new company created by the individual Defendants.

In sum, the Court will grant Defendants' motion to dismiss Plaintiff's First Claim against Defendants Seppers and Trivent, as well as claims against Defendants Biederman and McClure under 18 U.S.C. §§ 1030(a)(5)(A) and 1030(a)(5)(C), but will deny the motion as to Plaintiff's First Claim against Defendants Biederman and McClure pursuant to 18 U.S.C. §§ 1030(a)(4) and 1030(a)(5)(B).

## II.    Third Claim for Violations of DTSA

Plaintiff alleges its third claim asserting that the individual  Defendants, with Trivent's knowledge, improperly obtained and are currently using Plaintiff's customer and vendor lists, product and services pricing, and training materials "to promote the sales of Trivent's products and services to detract sales and customers from MSC." Am. Compl. ¶ 83.

To state a plausible claim for misappropriation of trade secrets under the DTSA, a plaintiff must allege: "(1) the existence of a trade secret that relates to a product or service used in, or intended for use in, interstate or foreign commerce; (2) the acquisition of the trade secret, or the use or disclosure of the trade secret without consent; and (3) the person acquiring, using, or disclosing the trade secret knew or had reason to know that the trade secret was acquired by improper means." *Zvelo, Inc. v. Akamai Techs., Inc.*, No. 19-cv-00097-PAB, 2019 WL 4751809, at *2 (D. Colo. Sept. 30, 2019) (citing *Arctic Energy Servs., LLC v. Neal*, No. 18-cv-00108-PAB, 2018 WL 1010939, at *2 (D. Colo. Feb. 22, 2018)); *see also Camick v. Holladay*, 758 F. App'x 640, 644–45 (10th Cir. 2018) ("The DTSA defines 'misappropriation' as the 'acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means'; or the 'disclosure or use of a trade secret' without the consent of the owner.") (citing 18 U.S.C. §§ 1839(5)(A)-(B)); *Bellwether Cmty. Credit Union v. Chipotle Mexican Grill, Inc.*, 353 F. Supp. 3d 1070, 1086 (D. Colo. 2018) ("To state a claim for relief, Plaintiffs must allege: the existence of a trade secret; misappropriation of that trade secret by [Defendant]; and set forth how the trade secret implicates interstate or foreign commerce.").

A "trade secret" under DTSA includes:

all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs,

or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if --

> (A) the owner thereof has taken reasonable measures to keep such information secret; and

> (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

18 U.S.C. § 1839(3). Defendants contend that Plaintiff's allegations are insufficient to demonstrate any protected trade secrets, primarily because Plaintiff has failed to show its training materials are not published to the public, Plaintiff has failed to allege it has taken reasonable measures to protect any of the purported "trade secret" materials, and Plaintiff has not alleged any secrecy or value in its development or provision of its lists. Plaintiff counters that Defendants improperly raise a fact issue concerning publication of its training materials, its alleged "firewalls, antivirus software, password protection, and physical safeguards" are sufficient to demonstrate Plaintiff has taken reasonable measures to keep its confidential information secret, and the allegations that its confidential information, if disclosed, would enable others to compete to Plaintiff's detriment are sufficient to show the information derives independent economic value.

Taking the allegations as true, the Court agrees with Plaintiff that it has pleaded the existence of trade secrets under the DTSA. Plaintiff alleges that, due to the "highly competitive nature of the safety consulting industry," it closely protects confidential customer and vendor lists, product and services pricing, and training materials, which are developed and maintained "at significant expense." Am. Compl. ¶¶ 13, 15-18; *see also Wright Med. Tech. v. Paragon 28, Inc.*, No. 18-cv-00691-PAB, 2019 WL 4751807, at *3 (D. Colo. Sept. 30, 2019) (allegations of "[p]roduct cost and pricing information, including pricing strategies,...customer demand and purchasing

information, and the terms of customer and supplier contracts" sufficiently identify nature of trade secrets). To protect this information, Plaintiff uses "among other things, firewalls, antivirus software, password protection, and physical safeguards," and it does not share the information with the public. *Id.* ¶¶ 14, 19; *see also Blue Star Land Servs., LLC v. Coleman*, No. CIV-17-931-R, 2017 WL 6210901, at *5 (W.D. Okla. Dec. 8, 2017) (a plaintiff who limited access to a "need-to-know" basis, used passwords to protect servers and networks, and required non-disclosure agreements from "staffers and third parties," took "reasonable measures to protect secrecy"). Rather, Plaintiff provides the customer and vendor lists only to its current employees, a total of six people, "for the purpose of carrying out their [ ] job responsibilities." *Id.* ¶¶ 10, 19; *see also Zvelo, Inc.*, 2019 WL 4751809, at *3 ("This limited access [to fewer than five employees] inside and outside the business demonstrates precautions taken by plaintiff to guard the secrecy of the information."). Finally, Plaintiff asserts that the information "is of great value to [Plaintiff], and provides [Plaintiff] with a business advantage over competitors that do not have access to, or knowledge of, the confidential information." *Id.* ¶ 20; *see also Blue Star Land Servs., LLC*, 2017 WL 6210901, at *5-6 (finding the trade secret had independent economic value where defendant allegedly functioned "in a highly competitive market *because* of their acquisition and use of such trade matter" (emphasis in original)).

Defendants also contend Plaintiff fails to allege plausibly that any "knowing acquisition" of its trade secrets was "improper," but rather Plaintiff "baldly alleges that [the individual Defendants] used the 'trade secrets' in a 'wrongful scheme.'" Mot. 12. "Improper means" is defined by the DTSA as including "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." 18 U.S.C. § 1839(6). The Court finds that Plaintiff pleads plausible misappropriation by alleging that the individual

Defendants knowingly committed civil theft, trespassed, and/or breached their duty of loyalty by:

a.  Misappropriating [by removing, copying, or deleting] Proprietary Information for the benefit of themselves and Trivent and with the specific intent to compete with MSC;

b.  Soliciting MSC clients with the specific intent to compete with MSC;

c.  Misrepresenting their employment status and loyalty to MSC in that the Individual Defendants were actually working to advance their own interests and the interests of Trivent, to the detriment and expense of MSC, while employed by and receiving compensation from MSC;

d.  Charging expenses related to the operation of Trivent to MSC, an action taken by the Individual Defendants while representing to third parties that they were acting on behalf of MSC;

e.  Failing to disclose that they were competing with MSC while employed by and receiving compensation from MSC;

f.  Postponing and/or refusing to perform work for MSC's clients and customers while still employed by MSC for the purpose of diverting such work to Trivent;

g.  Intending to create the impression that they were working for MSC when, in fact, they were working for their own interests or the interests of Trivent;

h.  Soliciting and obtaining through the use of MSC IT resources, testimonials from MSC clients and customers for the purpose of competing with MSC.

Am. Compl. ¶¶ 45-47, 107. *See Select Energy Servs., Inc. v. Mammoth Energy Servs., Inc.*, No. CIV-19-28-R, 2019 WL 1434586, at *9 (W.D. Okla. Mar. 29, 2019) (finding plausible DTSA violation from allegations that defendants used information acquired by the individual defendants to solicit business previously "awarded" to plaintiff to form a competing entity).

The Court concludes that Plaintiff states a plausible Third Claim for violations of the DTSA and will deny Defendants' motion to dismiss the claim.

## III. State Law Claims

Because Plaintiff's federal claims have survived dismissal under Fed. R. Civ. P. 12(b)(6),

the Court will refuse Defendants' invitation to decline to exercise supplemental jurisdiction over the remaining state law claims pursuant to 28 U.S.C. § 1367(c)(3). Furthermore, the Court finds that Plaintiff's eight state law claims do not substantially predominate over the two federal claims pursuant to 28 U.S.C. § 1367(c)(2); although the state claims outnumber the federal claims, two of the state claims are substantially similar to the federal claims and the other six are alternate causes of action that arise out of the same nucleus of facts as the federal claims. *See Whitelaw v. Anderson*, No. 11-cv-00809-WJM, 2012 WL 1059984, at *2 (D. Colo. Mar. 29, 2012) ("The law is clear that when deciding whether the state law claims predominate over the federal claim, the relevant issue is the type of claims, not the number.") (citing *Shahriar v. Smith & Wollensky Rest. Group, Inc.*, 659 F.3d 234, 246–47 (2d Cir. 2011)). Thus, the Court will proceed to evaluate whether Plaintiff states plausible state law claims against Defendants.

A.    Second Claim for Negligence Per Se

In Colorado, "negligence per se occurs when the defendant violates a statute adopted for the public's safety and the violation proximately causes the plaintiff's injury." *Scott v. Matlack, Inc.*, 39 P.3d 1160, 1166 (Colo. 2002). If a court finds the statute applies to the defendant's alleged conduct, then the statute "conclusively establishes the defendant's standard of care and violation of the statute is a breach of his duty." *Id.* To state a plausible claim, a plaintiff must allege not only the violation of a public safety statute and that the violation proximately caused plaintiff's injury, but also that "the statute was intended to protect against the type of injury [plaintiff] suffered and that [plaintiff] is a member of the group of persons the statute was intended to protect." *Id.*

Here, Plaintiff bases its negligence per se claim on Defendants' alleged violations of Colo. Rev. Stat. § 18-5.5-102, Colorado's "Cybercrime Statute," which all parties agree closely follows the language of the CFAA. No party contends that the statute was not "adopted for the public's

safety"; thus, for purposes of this analysis, the Court will assume a negligence per se claim in Colorado may be based on the Cybercrime Statute.[3] Defendants argue that Plaintiff's second claim should be dismissed for the same reasons proffered for the CFAA claims—i.e., Plaintiff "has not alleged facts indicating that Defendants accessed the email, website accounts, and server without authorization, that they had no authorization, or that they exceeded that authorization." Mot. 14. However, for the reasons set forth in Section I, the Court disagrees in part.

Notably, unlike for its first claim, Plaintiff does not identify the subsection(s) of the Cybercrime Statute allegedly violated by Defendants. The statute identifies ten types of violations, at least three of which the Court finds are analogous to those Plaintiff plausibly pleads for its CFAA claim: § 18-5.5-102(1)(a), § 18-5.5-102(1)(b), and § 18-5.5-102(e). That is, the Court finds Plaintiff's allegation, taken as true, that "Biederman and McClure ... without authorization from MSC, deleted thousands of Company emails from MSC's email servers with the intent to defraud MSC and in furtherance of their scheme to compete with MSC while still employed by MSC" (Am. Compl. ¶ 46) plausibly states that these Defendants exceeded their authorized access to Plaintiff's computers in violation of §§ 18-5.5-102(1)(a), (1)(b) and (1)(e) by altering (deleting) information they were not entitled to delete in furtherance of a fraudulent scheme. Further, Plaintiff's allegation that "[a]fter his termination, on or about November 1, 2018, McClure, on behalf of all Defendants, accessed MSC's online website management system without authorization and deleted information and data from MSC's website" (Am. Compl. ¶ 47) plausibly states a violation of, at least, § 18-5.5-102(1)(a).

However, as above, the Court finds Plaintiff fails to allege violations of the Cybercrime

---

[3]The parties cite, and the Court has found, no case in Colorado addressing a negligence per se claim for which the plaintiff invokes the Cybercrime Statute.

Statute against Defendants Seppers and Trivent. Without such allegations, Plaintiff's claims of negligence per se fail as to these Defendants. *See Scott*, 39 P.3d at 1166 ("negligence per se occurs when the defendant violates a statute adopted for the public's safety"). Accordingly, the Court will grant Defendants' motion to dismiss Plaintiff's Second Claim as to Defendants Seppers and Trivent, but deny the motion as to Plaintiff's Second Claim against Defendants Biederman and McClure.

B. Fourth Claim for Violation of CUTSA

To prevail on a claim for misappropriation of trade secrets under Colorado law, a plaintiff must show: "(i) that he or she possessed a valid trade secret, (ii) that the trade secret was disclosed or used without consent, and (iii) that the defendant knew, or should have known, that the trade secret was acquired by improper means." *Zvelo, Inc.*, 2019 WL 4751809 at *2 (quoting *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 9 F.3d 823, 847 (10th Cir. 1993)). CUTSA defines "trade secret" as "the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, improvement, confidential business or financial information, listing of names, addresses, or telephone numbers, or other information relating to any business or profession which is secret and of value." Colo. Rev. Stat. § 7-74-102(4). To constitute a trade secret, "the owner thereof must have taken measures to prevent the secret from becoming available to persons other than those selected by the owner to have access thereto for limited purposes." *Id.*

All parties agree that Rule 12(b)(6) analyses of DTSA and CUTSA claims are identical. Mot. 15; Resp. 17. Accordingly, for the reasons set forth in Section II, Defendants' motion to dismiss Plaintiff's Fourth Claim for violations of the CUTSA is denied.

C. Fifth Claim for Breach of Duty of Loyalty

Under Colorado law, an employee breaches a duty of loyalty if he or she solicits customers for a rival business or solicits other employees to terminate their employment. *DTC Energy Grp.,*

17

*Inc. v. Hirschfeld*, No. 17-cv-01718-PAB, 2019 WL 4695743, at *5 (D. Colo. Sept. 25, 2019) (citing *Jet Courier Serv., Inc. v. Mulei*, 771 P.2d 486, 497 (Colo. 1989)). Citing *Jet Courier*, the Tenth Circuit has instructed that "courts should focus on the following factors in determining whether an employee's actions rise to the level of a breach of loyalty: (1) the nature of the employment relationship; (2) the impact or potential impact of the employee's actions on the employer's operations; and (3) the extent of any benefits promised or inducements made...to obtain their services in the competing business." *See id.* (citing *In re Prof'l Home Health Care, Inc.*, 159 F. App'x 32, 34 (10th Cir. 2005)). No one factor is determinative; thus, the factors must be weighed. *Id.*

Here, Plaintiff's allegations reflect that the individual Defendants were employed as Senior Safety Consultants (Biederman and McClure) and a Safety Consultant (Seppers), who were tasked with "provid[ing] MSC customers and clients with safety training, [assisting] clients with any safety related matters, and [conducting] inspections of client work sites." Am. Compl. ¶ 25. According to Plaintiff, the Safety Consultant positions were "the 'face' of the company" and in such positions the Defendants held authority, trust, and responsibility granted by Plaintiff. Also, the safety consulting industry itself "is a small niche industry that is highly competitive." *Id.* ¶¶ 10, 12. Plaintiff alleges that Defendants, while still employed with Plaintiff, formed a competing business (Defendant Trivent), conducted business for Trivent, used Plaintiff's resources to solicit customers and purchase products and services for Trivent, postponed safety services for Plaintiff's customers to divert such services to Trivent, and used Plaintiff's confidential information for conducting Trivent's business. *Id.* ¶¶ 30-41.

The Court finds these allegations, taken as true, demonstrate that Defendants, while holding positions of trust and authority in a small company that conducts business in a highly competitive

industry, could heavily impact Plaintiff's business operations by resigning and leaving the company *en masse* on the same day, using Plaintiff's confidential information and other resources to form a competing business, and soliciting Plaintiff's customers to maintain such competing business. Such allegations are sufficient to state plausible claims against the individual Defendants for breach of the duty of loyalty. *See L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.*, 125 F. Supp. 3d 1155, 1184 (D. Colo. 2015) (citing *In re Prof'l Home Health Care, Inc.,* 159 F. App'x at 34 and *Jet Courier Serv., Inc.*, 771 P.2d at 493).

Defendants concede that Colorado recognizes a breach when an employee "directly compet[es] with or solicit[s] customers while still employed by the original employer." Mot. 15. But Defendants assert that the allegations do not reflect they prepared for their competing business "during work hours" at MSC. The Court disagrees. Plaintiff asserts that "while individual Defendants were MSC employees, they used MSC offices and property to actively and wrongfully solicit MSC's current and prospective clients in order to grow Trivent's business." Am. Compl. ¶ 36. Taking it as true, the allegation is sufficient to state a plausible breach.

Therefore, the Court will deny Defendants' motion to dismiss Plaintiff's Fifth Claim for breach of the duty of loyalty against the individual Defendants.

D. <u>Sixth Claim for Conversion, Seventh Claim for Civil Theft, and Ninth Claim for Trespass to Chattel</u>

Defendants argue that Plaintiff's allegations fail to demonstrate plausible claims for conversion, civil theft, and trespass to chattel, all of which have similar elements of proof.

To demonstrate a plausible claim of conversion under Colorado law, a plaintiff must allege: (i) the defendant exercised dominion or ownership of property; (ii) the property belonged to the plaintiff; and (iii) the plaintiff did not authorize the defendant's conduct. *Johnstown Feed & Seed,*

*Inc. v. Cont'l W. Ins. Co.*, 641 F. Supp. 2d 1167, 1175 (D. Colo. 2009) (citing *Glenn Arms Assocs. v. Century Mortg. & Inv. Corp.*, 680 P.2d 1315, 1317 (Colo. App. 1984)). "Predicates to a successful claim for conversion are the owner's demand for the return of the property, and the controlling party's refusal to return it." *Internet Archive v. Shell*, 505 F. Supp. 2d 755, 762 (D. Colo. 2007) (quoting *Glenn Arms Assocs.*, 680 P.2d at 1317).

In addition, "a plaintiff must show it suffered some actual injury or damages stemming from converted property." *US Fax Law Ctr., Inc. v. iHire, Inc.*, 374 F. Supp. 2d 924, 928 (D. Colo. 2005), *aff'd*, 476 F.3d 1112 (10th Cir. 2007) (citing *Culpepper v. Pearl St. Bldg., Inc.*, 877 P.2d 877, 881 n.6 (Colo. 1994)). In other words, the converted property must have compensable value; "[t]he measure of damages for conversion is the value of the converted property plus interest from the time of conversion to the time of trial." *Culpepper*, 877 P.2d at 881 n.6 (citing *Masterson v. McCroskie*, 573 P.2d 547 (Colo. 1978)).

Under Colorado law, a person commits civil theft when he or she "'knowingly obtains, retains, or exercises control over anything of value of another without authorization or by threat or deception,' and acts intentionally or knowingly in ways that deprive the other person of the property permanently." *DTC Energy Grp., Inc.*, 2019 WL 4695743, at *9 (quoting *Van Rees v. Unleaded Software, Inc.*, 373 P.3d 603, 608 (Colo. 2016)); *see also* Colo. Rev. Stat. § 18-4-401(1). A person must have "the specific intent to permanently deprive the owner of the benefit of property." *Id.* "In an action for civil theft, a person may maintain an action to recover "property obtained by theft, robbery, or burglary." *Id.* (quoting Colo. Rev. Stat. § 18-4-405); *see also Itin v. Ungar*, 17 P.3d 129, 134 (Colo. 2000) (holding that the statute provides an owner of property with a private remedy that "requires proof of a specified criminal act").

Finally, to establish a cause of action in trespass to a chattel in Colorado, there must be an

intentional interference with the possession or physical condition of a chattel in the possession of another. *US Fax Law Ctr., Inc.*, 374 F. Supp. 2d at 928 (citing *Mountain States Tel. & Tel. Co. v. Horn Tower Constr. Co.*, 363 P.2d 175, 177 (Colo. 1961)). The *Mountain States* court cited with approval the Restatement of the Law of Torts, § 218, which provides in relevant part: "One who without a consensual or other privilege to do so, uses or otherwise intentionally intermeddles with a chattel which is in the possession of another is liable for a trespass to such person if, but only if, . . . (b) the possessor is deprived of the use of the chattel for a substantial time." Restatement (First) of Torts § 218.

Here, Plaintiff alleges the individual Defendants, using Plaintiff's credit card, ordered "500 ITI Rigging Cards, valued at approximately $2000"; such cards were used for trainees in Plaintiff's classes; the purchased cards were delivered to Plaintiff's office in Frederick, Colorado; and, after the individual Defendants' separation of employment, Plaintiff conducted an inventory and discovered the cards "along with numerous other safety equipment items, were missing." Am. Compl. ¶¶ 52-54. Also, Plaintiff alleges that at or after his separation of employment, Biederman entered Plaintiff's property in Brighton, Colorado for the "sole purpose of . . . remov[ing] his personal property and return[ing] his keys to" Plaintiff; and, while there, Biederman "exceeded his limited authority by wrongly searching the property and removing MSC materials, including numerous pieces of safety equipment." *Id.* ¶¶ 55-57. Plaintiff asserts that it "demanded immediate return of the training equipment and materials," but "Defendants failed to return" them. *Id.* ¶¶ 113-114.

Defendants argue the Plaintiff "does not allege that any Defendant had access to the equipment or cards" and Plaintiff "is unable to provide any facts that [the individual Defendants] took any property from [Plaintiff's] possession." The Court agrees in part; with respect to the

property allegedly taken from the Frederick office, the Plaintiff's allegations reflect only that Plaintiff discovered the property was "missing" after termination of the individual Defendants' employment. Nothing in these allegations reflect that any of the Defendants had access to the Frederick property or anything in it, either before or after their employment separation. Also, while Plaintiff alleges that "prior to the termination date," the "Individual Defendants ordered over 500 ITI Rigging Cards," nothing in the allegations reflects whether the purchase occurred *just* before Defendants' termination, which, taken as true, might imply that Defendants exercised dominion over the cards for use at Trivent, or whether the purchase occurred *well* before Defendants' termination, which, taken as true, may imply that Defendants used the cards in the regular course of their duties with Plaintiff. In other words, Plaintiff's allegations regarding property taken from its Frederick office, even taken as true, do not "nudge[ ] [its] claims across the line from conceivable to plausible." *Shields*, 744 F.3d at 640.

With that said, the Court finds plausible Plaintiff's allegations concerning Biederman's entrance into the Brighton office at the time of his termination and his alleged taking of "materials and numerous pieces of safety equipment." These allegations are sufficient to demonstrate plausible claims for conversion, civil theft, and trespass to chattels under Colorado law.

Therefore, the Court will grant the Defendants' motion to dismiss Plaintiff's Sixth, Seventh, and Ninth Claims to the extent they refer to property taken from the Frederick office, and deny the motion to the extent the claims refer to property taken from the Brighton office. As such, all Defendants except Biederman are dismissed with respect to the Sixth, Seventh, and Ninth Claims.

E.    Eighth Claim for Trespass

To demonstrate a plausible claim for trespass, a plaintiff must allege "a physical intrusion upon the property of another without the proper permission from the person legally entitled to

possession of that property." *Sanderson v. Heath Mesa Homeowners Ass'n*, 183 P.3d 679, 682 (Colo. App. 2008) (citing *Public Serv. Co. v. Van Wyk*, 27 P.3d 377, 389 (Colo. 2001)).

Plaintiff's claim is alleged against "all Defendants," but references only Biederman's entry into the Brighton office at or after his employment separation. While Plaintiff alleges that Biederman's action "was with the knowledge of and for the benefit of Defendants," Plaintiff fails to explain how such allegation is sufficient to show a "physical intrusion upon the property" by Trivent, McClure, and/or Seppers. Thus, the claim will be dismissed as to these three Defendants.

However, the allegations are sufficient to demonstrate a plausible claim of trespass against Defendant Biederman. Plaintiff alleges that Biederman "intentionally exceeded the scope of his limited permission to enter the Brighton Property by wrongfully taking numerous pieces of training equipment and materials belonging to MSC." Am. Compl. ¶ 128.

Accordingly, the Court will grant Defendants' motion to dismiss Plaintiff's Eighth Claim against Defendants Trivent, McClure, and Seppers, and deny the motion as to Plaintiff's Eighth Claim against Defendant Biederman.

F.     Tenth Claim for Tortious Interference with Prospective Business Relations

To establish a claim for tortious interference with prospective business relations under Colorado law, a plaintiff must show intentional and improper interference with another's prospective contractual relation. *Nobody in Particular Presents, Inc. v. Clear Channel Commc'ns, Inc.*, 311 F. Supp. 2d 1048, 1117 (D. Colo. 2004) (citing *Dolton v. Capitol Fed. Sav. & Loan Ass'n*, 642 P.2d 21, 23 (Colo. App. 1981)). For liability to attach, a defendant's intentional and improper interference must either induce or cause the third party not to enter into or continue relations. *Id.* (citing *Wasalco, Inc. v. El Paso Cty.*, 689 P.2d 730, 732 (Colo. App. 1984)); *see also Klein v. Grynberg*, 44 F.3d 1497, 1506 (10th Cir. 1995).

Importantly, it is not necessary to prove an underlying contract. *Klein*, 44 F.3d at 1506. "Rather, a continuing business or customary relationship, which includes a prospective quasi-contract, suffices to create rights against intentional interference." *Nobody in Particular Presents, Inc.*, 311 F. Supp. 2d at 1117 (citing Restatement (Second) of Torts § 766B cmt. c.).

Here, Plaintiff alleges that, while the individual Defendants were still employed with Plaintiff, they (1) "used MSC offices and property to actively and wrongfully solicit MSC's current and prospective clients in order to grow Trivent's business"; (2) "postponed and/or refused to perform work for MSC clients and current and prospective customers until after Individual Defendants terminated their employment with MSC in order to divert these clients and current and prospective customers to Trivent"; and, (3) "made disparaging remarks about MSC and attempted to convince MSC clients and current and prospective customers to transfer their business to Trivent." Am. Compl. ¶¶ 36-38. The Court finds these allegations sufficient to state plausible claims for tortious interference with Plaintiff's ongoing and prospective business relations.

Defendants argue only that Plaintiff "has not alleged that any of its clients or prospective clients were subject to a contract that was not terminable at will." Mot. 19-20. However, as set forth above, Colorado law does not require a showing of an underlying contract for this tort; instead, "the plaintiff must show that there is 'a reasonable likelihood or probability that a contract would have resulted; there must be something beyond a mere hope.'" *Hertz v. Luzenac Grp.*, 576 F.3d 1103, 1119 (10th Cir. 2009) (quoting *Klein*, 44 F.3d at 1506). In this case, Plaintiff alleges Defendants' interference with its "clients and current and prospective customers"; the Court finds these allegations suffice to establish the "continuing business or customary relationship" necessary for a tortious interference claim. *See Pers. Dep't, Inc. v. Prof'l Staff Leasing Corp.*, 297 F. App'x 773, 777 (10th Cir. 2008) (quoting *Ervin v. Amoco Oil Co.*, 885 P.2d 246, 254 (Colo. App. 1994),

*rev'd on other grounds*, 908 P.2d 493, 502 (Colo.1995) ("it is 'not necessary that [the plaintiff] identify a specific customer relationship or a specific customer' with whom he or she had a prospective relationship").

Consequently, the Court will deny Defendants' motion to dismiss Plaintiff's Tenth Claim for tortious interference with prospective business relations.

## CONCLUSION

In sum, Defendants' Motion to Dismiss Under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) [filed May 28, 2019; ECF 18] is **granted in part and denied in part** as follows.  Plaintiff's First Claim against Defendants Seppers and Trivent; Plaintiff's First Claim against Defendants Biederman and McClure pursuant to 18 U.S.C. §§ 1030(a)(5)(A) and 1030(a)(5)(C); Plaintiff's Second Claim as to Defendants Seppers and Trivent; and, Plaintiff's Sixth, Seventh, Eighth, and Ninth Claims against Defendants McClure, Seppers, and Trivent are DISMISSED.   All other claims will proceed.

SO ORDERED.

Dated this the 15th day of October, 2019, in Denver, Colorado.

BY THE COURT:

Michael E. Hegarty

Michael E. Hegarty
United States Magistrate Judge