IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-00938-MEH

MSC SAFETY SOLUTIONS, LLC,

      Plaintiff/Counter Defendant,

v.

TRIVENT SAFETY CONSULTING, LLC,
DAX BIEDERMAN,
BRYAN McCLURE, and
SCOTT SEPPERS,

      Defendants/Counter Claimants,

v.

TROY CLARK,

      Counterclaim Defendant.

---

**ORDER**

---

**Michael E. Hegarty, United States Magistrate Judge.**

The parties have filed various post-trial motions. I held oral argument on February 9, 2022. I address the motions as follows.

**BACKGROUND**

Plaintiff MSC is a Colorado company that provides safety consulting services commercial construction contractors, government agencies, and general industry manufacturing facilities. Among other things, Plaintiffs services include providing safety policy development, training for

management personnel and field level employees, safety and loss control inspections, accident investigations, and OSHA compliance assistance and representation

The individual Defendants worked for Plaintiff, having been hired in 2016 and 2017. They alleged that Troy Clark, Plaintiff's principal, promised them equity positions in the company, among other things, on which he reneged. They resigned and formed their own company (Defendant Trivent) in or about October 2018. Plaintiff contended that the individual Defendants walked away with all of Plaintiff's intellectual property, namely, the entire contents of its computer S Drive (which they copied), among other claims. This lawsuit ensued.

The matter was tried to a jury in October 2021. The total damages awarded to the Plaintiff approached $500,000.00. Defendants were unsuccessful on their three counterclaims.

## **DISCUSSION**

### I.      **Defendants' Motion for Costs and Attorneys' Fees**

Defendants have filed a Motion for Costs and Attorneys' Fees. ECF 177. The operative complaint in this case was the Second Amended Complaint and Jury Demand. ECF 66. It alleged ten causes of action against various Defendants. I dismissed under Fed. R. Civ. P. 12(b)(6) the following: (1) the First Claim for Relief for violation of the Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030 as against Defendants Seppers and Trivent Safety Consulting, LLC, and parts of the First Claim against Defendants Biederman and McClure; (2) the Second Claim for Relief under Colo. Rev. Stat. § 18-5.5-102 (under a theory of negligence *per se*) against Defendant Seppers; and (3) Plaintiff's Sixth through Ninth Claims for Relief against any Defendant except Biederman. ECF 41. On summary judgment, I granted Defendants' motion as to the First Claim for Relief under the CFAA; the Third Claim for Relief under the Defend Trade Secrets Act

(DTSA), 18 U.S.C. § 1836(b)(1) and the Colorado Uniform Trade Secrets Act (CUTSA), C.R.S. § 7-74-102 in their entirety; and several of the civil theft claims. After this Order on summary judgment, no federal claims remained among these non-diverse parties. I retained the case under the Court's supplemental jurisdiction.

I submitted to the jury six of the original ten causes of action, all state law theories. A total of eleven claims (with similar claims against separate Defendants submitted separately) went to the jury, and the Plaintiff prevailed on nine of those claims.

Defendants have moved for attorney's fees and costs on various theories. I will address each.

### A.    Partial Success on Motion to Dismiss

I do not find that the dismissed claims were so lacking in merit that a sanction of attorney's fees is appropriate, nor is there any statute cited by Defendants that supports their claim for such fees. This request is denied.

### B.    Fees and Costs for the CFAA Claim

The CFAA claim survived a motion to dismiss. Later, I granted summary judgment on the claim. The CFAA does not expressly authorize attorney's fees. I award none here.

### C.    Fees and Costs for the Trade Secrets Claims

The DTSA and CUTSA claims survived a motion to dismiss. Later, I granted summary judgment on the claims. Under the DTSA and CUTSA, the prevailing party *may* recover its reasonable attorney's fees if the claim of misappropriation was made in bad faith, which may be established by circumstantial evidence. *See* 18 U.S.C. § 1836(b)(3)(D); Colo. Rev. Stat. § 7-74-

105. Even under a bad faith standard, attorney's fees are in the discretion of the Court. On the current record, I cannot make a finding of bad faith. I would not exercise my discretion to award fees in any event. Therefore, I do not award fees and costs.

### D.      Fees and Costs Related to Discovery

Defendants seek fees and costs related to discovery arising from the federal claims that were all dismissed pretrial. I permitted these claims to proceed beyond the Rule 12(b)(6) stage. I do not find, based on my summary judgment order, that maintenance of these claims was frivolous and, therefore, do not award fees and costs.

### E.      Fees and Costs Related to Summary Judgment

Defendants seek fees and costs related to their briefing on their partially successful motion for summary judgment. Most cases in federal court have a summary judgment motion filed at some point, if the case proceeds that far. Losing such a motion on some grounds while prevailing on others does not provide a basis for reallocating fees and costs, nor do I find anything in the record that would cause me to do so here.

### F.      Fees and Costs for Discovery Motions

Defendants seek fees and costs arising from discovery conferences held by the Court on June 25 and October 26, 2020. Defendants contend that they prevailed upon the Court to compel Plaintiff to produce additional discovery and/or engage in other affirmative obligations. I agree that success in having a court compel an opposing party to produce discovery requires an award of attorney's fees under Fed. R. Civ. P. 37 absent extenuating circumstances, however, any request for fees should be timely raised. Defendants represent that I reserved judgment on the issue of fees and costs. I have listened to the audio recording from June 25, 2020 and read the transcript of the

October 26, 2020 discovery conference, and I could not find any record of such a statement by me. Moreover, I have no memory of it either. That is why a request for fees and costs must be temporally associated with the relevant court order, because it is difficult to reconstruct history without the benefit of a written court order. I think this request is stale, I have no reliable record of any order justifying fees and costs, and this request is therefore denied.

### G.    Fees and Costs Arising from a Mediation

The parties engaged in private mediation in 2020. Defendants contend Plaintiff showed bad faith by never even making a demand at the mediation. Conduct that occurs in a judicial officer's presence, even at a settlement conference, can be sanctionable. I am unaware of any authority for a court to sanction conduct that occurs during a private mediation. In any event, the mediation was a year and a half ago, and any such request must be made in a timelier fashion, just as with sanctionable discovery conduct. This request is denied.

### H.    Fees and Costs Arising from Plaintiff's Trial Presentation

Defendants seek fees and costs because Plaintiff failed to bring evidence at trial regarding several of its claims for relief. At many trials, the parties inevitably try a different case than the pleadings and dispositive orders would have permitted. Often this is at the urging of the court, other times it is because parties typically want to preserve "everything" but, in the thick of battle, realize what is really important and what is not. These are real time strategic decisions that may or may not be connected with what a party "could" prove. Each of the claims that could have been tried in this case had passed motion to dismiss and/or summary judgment muster and, therefore, had been determined by me to present live issues for a jury. The fact that Plaintiff may have sloughed off some claims during trial does not equate with sanctionable conduct. This request is denied.

II.   **Defendants'/Counterclaimants' Renewed Motion for Judgment as a Matter of Law under Fed. R. Civ. P. 50(b); Motion to Alter or Amend a Judgment under Fed. R. Civ. P. 59(e); and Motion to Grant Relief to Defendants from Final Judgment under Fed. R. Civ. P. 60**

Defendants move under various rules to alter the outcome of the trial. ECF 184. I address each below.

A.   **Fed. R. Civ. P. 50(b)**

Defendants proceed under Rule 50(b), which permits a motion for renewed judgment as a matter of law only on those grounds as to which the requesting party has previously moved under Rule 50(a) for judgment as a matter of law prior to the case being submitted to the jury. *Mountain Dudes v. Split Rock Holdings, Inc.*, 946 F.3d 1122, 1130-31 (10th Cir. 2019).

Defendants include in their argument a request for remittitur. This is more appropriately considered under Rule 59(e), because a motion for remittitur is impossible prior to the case being submitted to the jury. *See Mountain Dudes*, 946 F.3d at 1131 ("Compliance with Rule 50 is 'mandatory.' . . . . In order to preserve for appeal an argument challenging the sufficiency of the evidence, the movant must raise the same argument in both a Rule 50(a) and a Rule 50(b) motion."). Therefore, I will address Defendants' request for remittitur later in this Order.

First, Defendants contend the evidence of damages was insufficient to sustain the verdict. The relevant evidence at trial was (1) Plaintiff's principal Troy Clark testified (and disclosed pretrial) to his belief that his company had an original value of $500,000.00 (the price he paid for it in 2010); (2) Mr. Clark further testified (but did not disclose pretrial) that subsequent to 2010, he estimates that he had added $400,000.00 in value to his company through his own efforts; and (3) Plaintiff never explained the value of the property Defendants allegedly stole (through copying

the contents of the Plaintiff's S-drive) in comparison with the allegedly "overall" value of the company of $900,000.00.

Defendants argue that this $900,000.00 was never "connected" to any "claim." I disagree. Plaintiff explicitly and consistently associated the theft of the entire value of the company with the Defendants' alleged conversion/theft of the S Drive data. In the verdict form, for Plaintiff's conversion claim, the jury was asked whether Plaintiff had proved by a preponderance of the evidence that any or all of the individual Defendants were liable for conversion of the S Drive data. The jury instructions and verdict form were consistent with the claims actually tried to the jury. To the extent Defendants are arguing that Plaintiff did not inform the jury to which *specific* claim the $900,000.00 was supposed to be awarded, I address that below.

Defendants also argue, as noted above, Plaintiff did not, at trial, parse out the specific value of the S Drive data compared with the value of the company as a whole. Therefore, there was an insufficient basis for the jury to determine how to value Defendant's alleged conversion of the S Drive.

In its Response, Plaintiff referenced but did not directly address this argument. However, throughout this case, Plaintiff's counsel stated numerous times in hearings before the Court, and in briefs, and in the trial, Defendants stole the *entirety* of Plaintiff's business through their downloading of the S Drive contents. It was for Defendants to challenge, and the jury to decide, whether it was, in fact, true that the Plaintiff's total worth was represented in its work product (PowerPoint presentations, customer data, etc.) contained on the S Drive. The bulk of the damages awarded by the jury was for the Plaintiff's conversion claim, connected with the S Drive download. The jury awarded $100,000.00 each against the three individual Defendants.

Because (1) Plaintiff (through Mr. Clark) claimed Defendants stole his entire company; (2) the company was valued at $500,000.00 (even without Mr. Clark's "add on" at trial of $400,000.00); (3) the company's value was based on Mr. Clark's purchase price eleven years prior to trial, in 2010; and (4) the jury awarded less than $500,000.00 for the taking of the S Drive data, I cannot find a legal basis to order a new trial due to the failure of the Plaintiff to connect its damages theory to an actual loss suffered by it. The verdict was consistent with the evidence.

Finally, Defendants argue that because actual damage evidence was lacking, in light of inflammatory communications introduced against the individual Defendants, any damages awarded by the jury must have been "fueled by emotional reaction" (Mot. at 12) to the communications and not by actual evidence of loss. As noted above, I disagree with the premise that evidence of damage to Plaintiff was lacking. Further, the size of the modest verdict here was not, as a matter of law, so disproportionate to the evidence as to support any claim the jury relied on inappropriate considerations.

### B.      Duplicative Damages

For the same reason as the Rule 50(b) motion, I reject the argument that based on the size of the recovery, the jury awarded duplicative damages. One interpretation of the verdict is that the jury valued the S Drive less than Mr. Clark testified ($390,000.00 out of the suggested $900,000.00) and divided that amount among the three individual Defendants on the three claims dealing with the S Drive. I deal with that issue below. I have reviewed the jury instructions and verdict form in this case, and they instructed the jury that, if Plaintiff prevailed on its any claim, the jury was to award only damages based on the value of the property taken, and only against a Defendant if, by a preponderance of the evidence, the Plaintiff established the elements of its claim as to that Defendant. The verdict form permitted the jury to find each of the individual Defendants

either liable or not liable and, "[a]s to any such "Liable" Defendant against whom [the jury] find[s] MSC Safety Solutions, LLC has proved damages, . . . the amount of damages, if any, that has been proved as to that Defendant." Verdict Form, ECF 171 at 11.

That said, Defendants forward one argument regarding duplicate damages with which I must agree. For the individual Defendants' singular act of copying of the S Drive, Plaintiff brought alternative theories of conversion, civil theft, and negligence *per se* (the latter requiring Plaintiff to prove, under Instruction 41, "the Defendant(s) knowingly accessed MSC Safety Solutions, LLC's S-Drive to commit theft"). Conversion is different from negligence *per* se and civil theft primarily because "a claim for civil theft requires evidence of intent." *See Itin v. Ungar*, 17 P.3d 129, 136 n.10 (Colo. 2000). Conversion merely requires that the Defendants intentionally and substantially interfered with Plaintiff's ownership and possession of the S Drive under Instruction 33. All three claims proceeded to verdict. However, throughout the trial and in closing, Plaintiff gave the jury absolutely no basis to determine how to award distinct economic damages for the three claims. For example, whenever Plaintiff's counsel mentioned theft in closing, other than regarding a couple of tangible items such as a body harness, she mentioned conversion in the same breath, always in relation to the taking of the S Drive data. The jury awarded, against the three individual Defendants, three times $100,000.00 for conversion of the S Drive data, and three times $20,000.00 for civil theft. Moreover, the jury awarded three times $10,000.00 for negligence *per se*, a claim also tied explicitly defined as related to the individual Defendants' conduct toward the S Drive. Not once did Plaintiff's counsel even mention negligence *per se* in closing. Plaintiff's counsel gave the jury absolutely no basis in law or fact to award distinct economic damages for civil theft, conversion, and negligence *per se*, since all three relied on the singular act of copying the S Drive.

I must address the possibility, referenced above, that the jury valued the damage to the company at $390,000.00 ($100,000.00 x3 plus $20,000.00 x3 plus $10,000.00 x3) and simply apportioned it among the three claims that sought relief based on the copying of the S Drive. However, that would be pure speculation concerning the jury's actions. Because the evidence and argument in this case gave the jury no ability to rationally apportion damages among the three theft/conversion claims, and because the copying of the S Drive was an indivisible, single act, a remedy is necessary.

In Colorado, "a plaintiff may not receive a double recovery for the same wrong." *Lexton-Ancira Real Est. Fund, 1972 v. Heller*, 826 P.2d 819, 823 (Colo. 1992). In so holding, the Colorado Supreme Court cited *Superturf, Inc. v. Monsanto Co.*, 660 F.2d 1275, 1283-84 (8th Cir.1981) for the proposition that recovering compensatory damages on two claims is duplicative. I did instruct the jury that "[a] plaintiff is entitled to only one recovery for losses incurred because of a defendant's conduct," ECF 206, Instr. 62, but Plaintiff gave no evidence or argument to the jury to permit them to award distinct damages for the three claims addressed here. "A plaintiff is entitled to only one recovery for a single injury. *Rusch v. Lincoln–Devore Testing Laboratory*, 698 P.2d 832, 834 (Colo. App. 1984). Double recovery for the same injury violates principles of basic fairness. But where a plaintiff seeks recovery under independent claims based on allegations of separate injuries, such relief would not be unjust." *Sanderson v. Allstate Ins. Co.*, 738 F. Supp. 432, 435 (D. Colo. 1990). Here, the Plaintiff did not submit evidence or argument of "separate injuries" relating to the S Drive data. There was only one injury theory presented by Plaintiff: A complete "taking" of his business, valued at $900,000.00, all because of the individual Defendants' wholesale copying of the S Drive. The Colorado Supreme Court noted that separate damages may not be awarded when multiple claims are brought and the "acts constituting the violation of these claims are not separable." *Lexton-Ancira*, 826 P.2d at 823-24. That is the case here.

What is the appropriate remedy for duplicate damages?

> A plaintiff is entitled to only one recovery for losses incurred because of defendant's conduct; however, when claims are merged the larger of the awards survives. *See Montgomery Ward & Co. v. Andrews*, 736 P.2d 40 (Colo. App. 1987). This result comports with the policy that, in determining the proper measure of damages, whoever unlawfully injures another shall make the injured person whole. *Munson v. Boettcher & Co.*, 832 P.2d 967 (Colo. App. 1991), *aff'd*, 854 P.2d 199 (Colo. 1993).

*Sprung v. Adcock*, 903 P.2d 1224, 1226 (Colo. App. 1995). Based on this binding precedent, I will permit the damages award for the conversion claim to stand, as it was the largest of the awards. In addition, as to that claim alone, Plaintiff was entitled to and sought compensatory damages. Had either party requested a verdict form that segregated economic and compensatory damages for the conversion claim, at least part of this problem could have been resolved. But that did not happen.

Although I vacate the damages award for civil theft and negligence *per se*, under the civil theft statute, a prevailing plaintiff is entitled to attorney's fees. At the oral argument of these motions, Defendants' counsel agreed that even if I vacate the damages award for civil theft, the Plaintiff is entitled to attorney's fees for the favorable verdict on that claim.

## C.    Remedy for Pretrial Disclosure Violation

Defendants ask that the verdict be altered or amended because of Plaintiff's alleged pretrial failure to comply with Rule 26(a)(1) in disclosing damages. Many months before trial, during his deposition, Mr. Clark testified he valued his company at $500,000.00, because that is what he paid for it. At trial, without objection, Plaintiff's counsel asked Mr. Clark what he paid for his company, and he stated $500,000.00. Plaintiff next asked how that price was determined. Defendants' counsel objected, stating that while the $500,000.00 purchase price was testified to during Mr. Clark's deposition, he never disclosed the methodology concerning how that number was determined and should not be permitted to do so at trial. I allowed a response for purposes of

context for the jury and completeness of the damages testimony. The entire response was: "Steve Miller [the prior owner] and his accountant -- his accountant had some type of formula to value companies, they came up with a number, presented it to me, and I agreed upon it."

First, Defendants are mistaken that during discovery, Mr. Clark did not explain his basis for the $500,000.00. At his deposition a year and a half before trial, he explained in detail the methodology for this value, as well as the involvement of Mr. Miller and his accountant. ECF 207-1 at 19-21 (Clark Depo.).

Furthermore, Defense counsel did not raise this argument in the Rule 50(a) motion. ECF 165. Counsel did argue that "[n]o testimony was made or heard on the actual value of the documents or data on MSC's S-Drive at any of those times or present," and that "MSC has not requested the value of its company as a damage linked to any claim in this case." But the Rule 50(a) motion did not argue that it was error to include the "Steve Miller and his accountant" explanation. Therefore, the Rule 50(b) motion for a remedy based on the explanation of the origin of the $500,000.00 is waived.

It appears the parties agree that the $400,000.00 increase in value that was mentioned for the first time in this case during Mr. Clark's direct examination at trial was a new, previously undisclosed element of damages. Defendants did include an objection to this testimony in their Rule 50(a) motion. However, unlike Mr. Clark's testimony about the $500,000.00 value of his company, counsel for Defendants did not make a timely objection to this evidence at the time it was presented. "Absent a timely objection at trial, an alleged evidentiary error is waived 'except when it constitutes plain error resulting in manifest injustice.'" *United States v. Kulik*, 153 F.3d 729 (10th Cir. 1998) (quoting *United States v. Mendoza-Salgado*, 964 F.2d 993, 1008 (10th Cir. 1992)). *See Braun v. Medtronic Sofamor Danek, Inc.*, 141 F. Supp. 3d 1177, 1184 (D. Utah 2015),

*aff'd*, 719 F. App'x 782 (10th Cir. 2017) ("The parties dispute whether the record supports the conclusion that Medtronic successfully incorporated into its Rule 50(a) motion its pretrial arguments in the Collins *Daubert* Motion. But even assuming it did, Medtronic waived those arguments when it failed to timely object during Mr. Collins' testimony at trial."). Based on the requirement of the Federal Rules of Civil Procedure and black letter case law, I find this argument has been waived.

I will address any request for remittitur under Rule 59(e). The Tenth Circuit has stated concerning a trial court's denial of remittitur: "We will only find an abuse of discretion if the jury award is 'so excessive . . . as to shock the judicial conscience and to raise an irresistible inference that passion, prejudice, corruption or another improper cause invaded the trial.'" *Murphy Oil USA, Inc. v. Wood*, 438 F.3d 1008, 1021 (10th Cir. 2006) (citation omitted). In this trial judge's experience, the level of damages awarded here, which were far less than requested and less than half of the attorney's fees expended by the Plaintiff in getting the case to verdict (although that amount was not told to the jury), is perfectly pedestrian. I can find no basis in law or fact to justify reducing it.

### D.    Preemption of Claims

As noted herein, I dismissed all trade secret claims prior to trial. Defendants contend despite these rulings, "Plaintiff still requested damages at trial based on the takings of trade secrets." Mot. at 18. This is not true. Neither the term "trade secret" nor any iteration thereof was mentioned at this trial. There was not even a vague reference to any concept that could be considered the equivalent of "trade secret." Certainly, Mr. Clark testified that the S Drive data was important to him and his company and contained all their relevant work product and intellectual (which Plaintiff's counsel phrased as "intangible") property. But that is all.

### E.     Misconduct

Citing Fed. R. Civ. P. 60, Defendants argue they should be relieved from the verdict and judgment because Plaintiff's counsel engaged in misconduct by asking for duplicative damages. I do not believe Plaintiff's counsel did that. During closing, Plaintiff's counsel requested damages of $900,000.00 for conversion of the S Drive data. That number is explained above. At the time this request was made, Plaintiff's counsel was using a demonstrative exhibit that Defendants' counsel believed showed a request for three times $900,000.00, or $2.7 million. Defendants' counsel made a contemporaneous objection on that basis, during Plaintiff's closing. I then explained that I would identify to the jury the damages it could award, and thereafter Plaintiff's counsel returned to the $900,000.00 number as its total economic damages request. When Defendants' counsel commenced her closing, *she* told the jury the Plaintiff was requesting the $2.7 million (plus other damages bringing the total to over $3 million). Indeed, she mentioned the "millions" concept again later in her closing, while Plaintiff's counsel never did.

In addressing an improper closing argument, the Tenth Circuit has stated: "[E]ven though an argument may be improper, a judgment will not be disturbed unless it clearly appears that the challenged remarks influenced the verdict." *Lambert v. Midwest City Mem'l Hosp. Auth*., 671 F.2d 372, 375 (10th Cir. 1982) (citation omitted). *See King v. PA Consulting Grp., Inc*., 485 F.3d 577, 591 (10th Cir. 2007) ("We will not reverse on an improper [closing] argument unless it obviously prejudices one of the parties." (alterations and internal quotation marks omitted)).

First and foremost, I find Plaintiff's counsel did not request duplicative damages, and the jury instructions and verdict form were clear concerning the jury's obligations. But even if the inference to the jury (though the demonstrative) might be viewed to permit the jury to considered trebling the $900,000.00, under the standard cited above, the inference did not influence the

verdict, which was only *one-third* the *specifically requested $*900,000.00 for the conversion claim. There was no error here.

### III. Plaintiff MSC Safety Solutions, LLC's Motion to Amend the October 8, 2021 Judgment to Treble Civil Theft Damages, Provide for Pre-Judgment Interest, and Order Return of Plaintiff's Stolen Property and any Derivatives Thereof

#### A. Treble Civil Theft Damages

In this motion (ECF 189), Plaintiff seeks to amend the Final Judgment (ECF 176) in several respects. First, it seeks treble damages under Colorado's civil theft statute, Colo. Rev. Stat. § 18-4-405. The statute authorizes such damages, and Defendants do not dispute that. However, I have vacated the damages award for civil theft. That leaves only the tangible property civil theft claim as to Dax Biederman, which I treble to the amount of $615.66.

#### B. Prejudgment Interest

Plaintiff seeks eight percent prejudgment interest under Colo. Rev. Stat. § 5-12-102(1)(b). Although this case proceeded to trial under the Court's supplemental jurisdiction, those cases analyzing diversity jurisdiction govern here. "A federal court sitting in diversity applies state law, not federal law, regarding the issue of prejudgment interest." *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1156 (10th Cir.2000) (citation omitted). "[S]ection 5–12–102 is to be liberally construed to permit recovery of prejudgment interest." *Loughridge v. Chiles Power Supply Co.*, 431 F.3d 1268, 1289 (10th Cir. 2005). I find no basis to deviate from this established case authority and will award prejudgment interest at the Colorado statutory rate of eight percent. These amounts, as specifically proffered by Plaintiff in its Motion (ECF 189 at 6-7) and adjusted to be consistent with the Court's other rulings on the post-trial motions, are as follows:

• Dax Biederman, pre-judgment interest for conversion:

((.08/365) x1072 days) x $100,000.00 = $23,495.89[1]

 • Bryan McClure, pre-judgment interest for conversion:

((.08/365) x 1072 days) x $100,000.00 = $23,495.89

• Scott Seppers, pre-judgment interest for conversion:

((.08/365) x 1072 days) x $100,000.00 = $23,495.89

• Trivent, pre-judgment interest for intentional interference with

prospective business relations:

((.08/365) x 1072 days) x $75,000 = $17,621.92[2]


**C.      Return of S Drive Data**

Plaintiff asks that, pursuant to its recovery for civil theft for the S Drive data, Defendants return the same. Defendants agree that "Plaintiff . . . shall be entitled to the imaged version of such documents currently on a hard drive and presumably held by Plaintiff's attorney . . . . [U]pon confirmation [of the return], Defendants shall delete all relevant documents on their own side and provide confirmation of such action." Resp. at 3. Defendants shall also return the French Creek Harness and French Creek Lanyard that the jury determined were stolen (a request Defendants do not address). Plaintiff's request for other hard drives is denied, as is its request for "documents that derive from Plaintiff's S-Drive," as those were never the possession of Plaintiff, and there is an insufficient evidentiary record for the Court to determine what documents, if any, are "derivative" of the S Drive data.

---

[1] In her Motion, Plaintiff based this calculation on an award of $100,001.00. However, the jury found Dax Biederman liable for $100,000. ECF 171 at 11. The Court recalculates this pre-judgment interest request based on the correct jury award amount.

[2] In her Motion, Plaintiff based this calculation on a 1,071 day period. The Court recalculates this request based on a 1,072 day period to make it consistent with the others.

IV.     **Plaintiff MSC Safety Solutions, LLC's and Counterclaim Troy Clark's Motion for Attorneys' Fees and Costs**

At ECF 179, Plaintiff seeks an award of attorney's fees based on its successful prosecution of the Colorado statutory claim for civil theft. That statute, Colo. Rev. Stat. § 18-4-405, provides that "[i]n any such action, the owner may recover two hundred dollars or three times the amount of the actual damages sustained by him, whichever is greater, and may also recover costs of the action and reasonable attorney fees . . . ."  The Colorado Court of Appeals has determined this language to mandate fees for a prevailing plaintiff. *Steward Software Co. v. Kopcho*, 275 P.3d 702, 712 (Colo. App. 2010), *rev'd on other grounds,* 266 P.3d 1085 (Colo. 2011). I cannot dispute Defendants' plain language argument that this statute makes attorney's fees discretionary, However, "in this circuit, the matter of attorney's fees in a diversity suit is substantive and is controlled by state law. . . . [A] federal court sitting in diversity must apply the substantive law of the state in which it sits . . . ." *Boyd Rosene & Assocs., Inc. v. Kansas Mun. Gas Agency*, 123 F.3d 1351, 1352 (10th Cir. 1997). *See McGregor v. Thurlow*, 435 F. App'x 779, 781 (10th Cir. 2011) ("Because the Colorado courts have spoken on the specific issues before us, we must follow their reading of Colorado law.").

The more difficult decision is determining an appropriate fee. I should not decipher precisely which hours are reasonable and which are not, because this would run afoul of the Supreme Court's admonition not to allow the fee petition to become a second major litigation. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). In that vein, I need not identify and justify every hour for which a plaintiff seeks recovery.  *Malloy v. Monahan*, 73 F.3d 1012, 1018 (10th Cir. 1996).

In guiding this analysis, Plaintiff suggests I apply Colorado Rule of Professional Conduct 1.5. I have seen other judges in this District use Rule 1.5. *E.g., Watson v. Dillon Companies, Inc.*,

No. 08-cv-00091-WYD-CBS, 2013 WL 4547521, at *1 (D. Colo. Aug. 28, 2013). Rule 1.5 governs what an attorney may charge his or her own client, so some of the considerations in it are not relevant. Relevant considerations include: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the fee customarily charged in the locality for similar legal services; (3) the amount involved and the results obtained.

I will start with the novelty and difficulty of the questions involved. This must only refer to the issues that were tried to the jury. Plaintiff did plead some complex claims under federal statutory law as noted above, but those were all dismissed pretrial. The fact that a plaintiff chooses to file claims that may be novel and difficult, but those claims go away on dispositive motions, does not favor robust attorney's fees. The claims that were actually tried to the jury were not complex. They were, in their essence, theft and conversion claims. *See, e.g., Dowling v. United States*, 473 U.S. 207, 218, 105 S. Ct. 3127, 3133, 87 L. Ed. 2d 152 (1985) ("[I]nfringement plainly implicates a more complex set of property interests than does run-of-the-mill theft, conversion, or fraud."); *Brooks v. People*, 2019 CO 75M, ¶ 11, 448 P.3d 310, 313, *as modified on denial of reh'g* (Sept. 23, 2019) ("We have previously concluded that crimes such as second-degree murder and aggravated robbery are easily understandable by a layperson . . . . Certainly, theft falls safely within the sphere of those crimes, and can be readily contrasted with more complicated crimes . . . . "); *id.* at 314 n.2 ("[C]onsider the elements of theft . . . . Upon doing so, it is clear that the elements of theft are relatively simple . . . ."); *L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc*., 863 F. Supp. 2d 1066, 1079 (D. Colo. 2012) ("With regard to the equipment-based contentions, these are contentions that sound in the simple tort of conversion . . . .").

Next, I will address the time and labor required. Most of the original focus in this case was on the federal statutory claims, and rightfully so. They were the only claims that permitted these non-diverse parties to be in federal court. About half of the motion to dismiss and summary judgment briefing was devoted to these claims. I will make the logical assumption that some material part of discovery was expended on these claims as well. When viewed from the perspective that this case was overwhelmingly a breach of loyalty/conversion/theft action, it was over litigated. I do agree that some of the litigation capital expended by Plaintiff is attributable to confusion within the Defendants' camp on what happened with the S Drive data, which caused Plaintiff to spend unnecessary time and necessitated the Court's intervention on more than one occasion. I have taken that into consideration in this analysis.

The Colorado courts have determined that a court may properly reduce a requested attorney's fee based on the court's review of the excess time expended. *Payan v. Nash Finch Co.*, 310 P.3d 212, 221 (Colo. App. 2012) ("In our view, taking a downward adjustment for lack of complexity in the 'reasonable hours' portion of the initial lodestar calculation better serves the policy of encouraging counsel to act as private attorneys general in the pursuit of meritorious claims with the prospect of limited damages."). Colorado case authority supports a reduction here based on the excessive time expended.

Concerning the fees customarily charged, I do not doubt that the rates submitted by Plaintiff's counsel are typical for the Denver, Colorado market. Whether analyzed under a "customarily charged" or "labor required" standard, however, I do not believe that 1700 hours in attorney time is justified for this case, for the reasons identified above.

Finally, I address the amount involved and the results obtained. I join in Defendants' frustration (discussed above) at Plaintiff's failure to disclose either a damages theory or an approximate level of damages. Neither in the Scheduling Order nor in the Amended Final Pretrial Order did Plaintiff state the damages it was seeking. This was an opaque concept throughout the litigation. Therefore, it is impossible to judge the "amount involved." There is an objective standard arising from Mr. Clark's testimony. He stated he paid $500,000.00 for the Plaintiff company, and by October 2021 he had added $400,000.00 in value. Thus, the entire company was worth $900,000.00, but at all times it was a going concern. He did not go out of business as a result of Defendants' actions. Very little evidence was submitted regarding any discernible impact the Defendants' conduct had on Plaintiff's profitability. Regarding the S Drive, the evidence was that Defendants copied it, but the data was left intact for Plaintiff's use. Mr. Clark did testify that he believed some PowerPoint presentations were missing from the S Drive when the individual Defendants departed, but he was able to reconstruct those, albeit at a minor cost. Mr. Clark also testified that approximately nine companies with whom he did business, totaling about $175,000 in annual revenue (from a two-year standpoint), went with the Defendants when they left. Mr. Clark did not testify what his profit margin was, how many customers he had, or what his gross revenue was, so it is difficult to determine the magnitude of these alleged defections. But even if his margins were high, it is difficult to justify spending well over $1 million in attorney's fees under these facts. In any event, the jury found Defendant Trivent liable for intentional interference with prospective business relations with one of the customers and awarded damages of $75,000.00. The results obtained were $478,625.22 in total damages among the four Defendants under the jury verdict prior to any adjustments. Seven of the claims received less than $5000.00 in damages, including three claims for nominal damages ($1.00). As noted herein, I have found that the jury

awarded multiple recoveries for the same wrong, the copying of the S Drive data. The claims are merged into the conversion claim, for which Plaintiff recovered $300,000.00 in straight damages. The total verdict with enhanced damages, prejudgment interest, and costs will be approximately $477,000.00.

Plaintiff argues that its successful claims are inseparable from the unsuccessful. I do not dispute the "inextricably intertwined" concept forwarded by Plaintiff, but in light of the considerations expressed above, some adjustment is necessary. *See, e.g., United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1234 (10th Cir. 2000) (approving reductions based on prosecution of unsuccessful claims and other considerations); *Gudenkauf v. Stauffer Commc'ns, Inc.*, 158 F.3d 1074, 1077 (10th Cir. 1998) (affirming reduction of lodestar by eliminating hours on unsuccessful argument and duplicated services and research).

The reasonable fee for Plaintiff here is 50% of total time claimed by Plaintiff. The Tenth Circuit has approved this reduction method in appropriate cases. *See Latin v. Bellio Trucking, Inc.*, 720 F. App'x 908, 911 (10th Cir. 2017) ("As we have held, however, a reduction in hours, even a general write-down, is not erroneous as long as there are sufficient reasons for it."); *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1250 (10th Cir. 1998) (general reduction of attorney's fees to prevailing party not erroneous where sufficient reasons given); *Stockard v. Red Eagle Res. Corp.*, 972 F.2d 357, 1992 WL 180131, at *6 (10th Cir. July 27, 1992) ("This court has upheld the use of a percentage reduction in fees to account for partial success on the merits.") (citation omitted). Therefore, the Court finds that $503,827.50 (50% of the requested lodestar of $1,007,655.00) is a reasonable fee for Plaintiff.

Plaintiff also seeks costs beyond that permitted by the Clerk of the Court at ECF 190. The Clerk approved $16,085.44 in costs pursuant to Fed. R. Civ. P. 54(d) and 28 U.S.C. § 1920. Plaintiff argues that the Colorado civil theft statute allows a broader award of costs. Just as with the issue of attorney's fees under the civil theft statute, I must follow binding precedent. *Stender v. Archstone-Smith Operating Tr.*, 958 F.3d 938, 946 (10th Cir. 2020) ("Allowing for a discretionary award of costs unavailable under Rule 54(d) would run contrary to the Supreme Court's interpretation of that Rule."). I am not persuaded by Plaintiff's analysis on why I can award enhanced costs.

## CONCLUSION

Accordingly, for the reasons explained above, Defendants' Motion for Costs and Attorneys' Fees [filed October 22, 2021; ECF 177] is **denied**. Defendants' combined Renewed Motion of Judgment as a Matter of Law under Fed. R. Civ. P. 50(b), Motion to Alter or Amend a Judgment under Fed. R. Civ. P. 59(e), and Motion to Grant Relief to Defendants from Final Judgment under Fed. R. Civ. P. 60 [filed November 1, 2021; ECF 184] is **granted** only to the extent that the jury's award of damages for the civil theft and negligence *per se* claims is **vacated**. That combined Motion (ECF 184) otherwise is **denied**. Plaintiff's Motion to Amend the October 8, 2021 Judgment [filed November 5, 2021; ECF 189] is **granted in part and denied in part**. Plaintiff's Motion for Attorney Fees and Costs [filed October 22, 2021; ECF 179] is **granted in part** for a total award of $503,827.50 but otherwise **denied**.

The Court will enter an Amended Final Judgment that reflects the above rulings and the new judgment amount.

SO ORDERED.

Entered this 16th day of February, 2022, at Denver, Colorado.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge